ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com,
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NUSTART CONSTRUCTION SERVICES CORP doing business as NUSTART CLEARNING & JANITORIAL SERVICES CO.; ANDRE PAUL BAILEY, also known as PAUL BAILEY, PAUL ANDRE BAILEY, ANDRE BAILEY, ANDRE PAUL BISHOP and ANDRE BISHOP, an individual and DOE 1 through DOE 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>COMPLAINT FOR:<br><br>1. BREACH OF COLLECTIVE BARGAINING AGREEMENT;<br>2. BREACH OF FIDUCIARY DUTY;<br>3. FOR SPECIFIC PERFORMANCE COMPELLING AN AUDIT;<br>4. FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF;<br><br>[29 U.S.C. §§ 185, 1109, 1132(a)(3) 1132(g)(2) and 1145] |

Plaintiff, CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN

CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability

company, ("CLTF") alleges:

//

//

-1-

386389.1

**JURISDICTION AND VENUE**

1.    This action is brought by a fiduciary administrator on behalf of employee benefit plans to collect monthly fringe benefit contributions due such plans in accordance with the terms and conditions of the plans, the collective bargaining agreement between the employer and a labor organization, and pursuant to statutes, as well as for breach of fiduciary duty to the plans against the employer and its principal. This Court has jurisdiction over the claims asserted pursuant to sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185).  Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)), venue is proper in this district as the employer's performance and breach took place in this district and the plans are administered in this district.

**PARTIES**

2.    CLTF is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of, the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; and Southern California Partnership for Jobs Trust Fund (hereinafter referred to collectively as "TRUST FUNDS").   The TRUST FUNDS are express trusts created by written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the TRUST FUNDS exists pursuant to ERISA and section 302

386389.1

of the LMRA (29 U.S.C. § 186). CLTF and the TRUST FUNDS' (collectively hereinafter referred to as "Plaintiff") principal places of business are in the County of Los Angeles, State of California.

3. CLTF is a fiduciary as to the TRUST FUNDS, in that it:

    A. Exercises discretionary authority or discretionary control respecting the collection of delinquent (or possibly delinquent) fringe benefit contributions to the TRUST FUNDS, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the TRUST FUNDS in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

    B. Exercises authority or control respecting management or disposition of assets of the TRUST FUNDS, including but not limited to, receiving delinquent contributions collected and holding them in a bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those assets among the different TRUST FUNDS, different participants, different time periods and different jobs.

4. Plaintiff is informed and believes and thereon alleges that Defendant, NUSTART CONSTRUCTION SERVICES CORP doing business as NUSTART CLEARNING & JANITORIAL SERVICES CO. ("NUSTART"), is a California corporation organized and existing under and by virtue of the laws of the State of California and is engaged in business in the State of California with its principal place of business in the City of Lucerne Valley, County of San Bernardino, State of California and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

5. Plaintiff is informed and believes, and on that basis alleges, that Defendant, ANDRE PAUL BAILEY, also known as PAUL BAILEY, PAUL ANDRE BAILEY, ANDRE BAILEY, ANDRE PAUL BISHOP and ANDRE BISHOP ("BAILEY") is and

386389.1

has been at all times mentioned herein, an individual who is engaged in business in the City of Lucerne Valley, County of San Bernardino, State of California and is a principal, the Responsible Managing Officer, Chief Financial Officer, and Chief Executive Officer of the NUSTART.

6.     The true names and capacities, whether individual, corporate, associate, or otherwise named herein as DOE 1 through DOE 10, inclusive are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names, and Plaintiff will amend this Complaint to show their true names and capacities when the same have been ascertained.

## OTHERS

7.     The Southern California District Council of Laborers and its affiliated Local Unions, (collectively "UNION") is, and at all relevant times was, a labor organization representing employees affecting interstate commerce.  The UNION is not a party to this action.

## INDIVIDUAL DEFENDANT

8.     Plaintiff is informed and believes and thereon alleges that at all times material herein, that BAILEY, and DOE 1 through DOE 10, inclusive  (collectively hereinafter referred to as "PRINCIPALS") were and/or continue to be fiduciaries and/or parties in interest to the TRUST FUNDS as defined in 29 U.S.C. §§ 1002(14), and 1002(21)(A), for the reasons more fully described below and in the Second Claim for Relief.

9.     Plaintiff is informed and believes and thereon alleges that PRINCIPALS are responsible for running the day to day operations of NUSTART and are responsible for decisions pertaining to the reporting and payment of contributions to the TRUST FUNDS, and that they personally maintained control of those funds which should have been turned over to the TRUST FUNDS.

386389.1

10.     Plaintiff is informed and believes and thereon alleges that at all times herein, that the PRINCIPALS are the majority shareholders of NUSTART and/or the beneficial owners of NUSTART.

11.     Plaintiff is informed and believes and thereon alleges that PRINCIPALS acted on behalf of and in the interest of NUSTART in all aspects of labor relations and in NUSTART'S dealings and relations with the TRUST FUNDS, and the UNION.

12.     Plaintiff is informed and believes and thereon alleges that PRINCIPALS acted on behalf of NUSTART and in the interest of NUSTART in determining which employees NUSTART would report to the TRUST FUNDS, the number of hours upon which contributions would be reported as owing, and the amount and timing of contributions to be paid to the TRUST FUNDS.

## FIRST CLAIM FOR RELIEF

### (Against the NUSTART for Monetary Damages
### Due to Employee Benefit Plans)

13.     Plaintiff repeats and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 12, above as if fully set forth herein.

## AGREEMENTS

14.     At all times mentioned, NUSTART was and continues to be signatory to written collective bargaining agreements with the UNION, having executed a Laborers Short Form Agreement for the Construction Industry ("SHORT FORM") with the UNION on or about October 7, 2009, and thereafter, by becoming an eligible member of the Associated General Contractors of California, Inc., ("AGC") a multi-employer bargaining association signatory to Laborers Master Labor Agreements with the UNION in or about March 2016 .

386389.1

15.    Pursuant to the SHORT FORM, and by virtue of its membership in the AGC and designation of the AGC as its collective bargaining representative, NUSTART became bound to the UNION'S Laborers Master Labor Agreements ("MLA").   The MLA contains a provision that the MLA is applicable to all entities of the delinquent Contractor, change of name, or change of entity, provided that the delinquent contractor holds at least ten (10%) ownership in the new entity.

16.    Pursuant to the SHORT FORM and MLA, NUSTART became obligated to all the terms and conditions of the various Trust Agreements which created each of the TRUST FUNDS as they may be constituted in their original form or as they may be subsequently amended ("TRUST AGREEMENTS").  The referenced Agreements will be collectively referred to as "AGREEMENTS".

17.    Under the terms of the AGREEMENTS, employers, including NUSTART, are required to submit monthly fringe benefit contributions ("MONTHLY CONTRIBUTIONS") to the TRUST FUNDS for all hours worked by (or paid for) their employees who perform work covered by the AGREEMENTS ("COVERED WORK").

18.    Under the terms of the AGREEMENTS, employers, including NUSTART, are required to submit to the TRUST FUNDS, with their MONTHLY CONTRIBUTIONS, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("MONTHLY REPORTS").  The TRUST FUNDS rely on MONTHLY REPORTS – and the accuracy of those reports – to determine the amount of MONTHLY CONTRIBUTIONS due to the TRUST FUNDS by employers and the credit toward fringe benefits to be allocated to their employees.

19.    The AGREEMENTS provide for the payment of interest on delinquent MONTHLY CONTRIBUTIONS from the date due at a rate set by the trustees of the TRUST FUNDS.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The

386389.1

AGREEMENTS also provide for the payment of liquidated damages for each month of delinquent MONTHLY CONTRIBUTIONS or MONTHLY REPORTS, for each TRUST FUND separately, in the amount of twenty percent (20%) of the delinquent MONTHLY CONTRIBUTIONS due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition, employers are required to pay fees for the submission of checks not honored by the banks upon which they are drawn.

20.    The failure of employers to pay MONTHLY CONTRIBUTIONS when due causes damages to the TRUST FUNDS and its participants beyond the value of the unpaid MONTHLY CONTRIBUTIONS, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the TRUST FUNDS, which is incurred even if the MONTHLY CONTRIBUTIONS for a given month are later paid.  It is based on the TRUST FUNDS' ratio of collection costs over amounts collected, which are regularly reported to the TRUST FUNDS' trustees.

21.    Under the terms of the AGREEMENTS employers, including NUSTART, agree to subcontract COVERED WORK only to entities that are signatory to an MLA applicable to the work performed.  If an employer subcontracts COVERED WORK to a non-signatory entity ("SUBCONTRACTING VIOLATION(S)"), the employer becomes liable to the TRUST FUNDS in an amount equal to the MONTHLY CONTRIBUTION that would have been due if the entity had been signatory, plus interest, liquidated damages and audit fees thereon.

386389.1

22.     Under the terms of the AGREEMENTS, employers, including NUSTART, agree not to subcontract COVERED WORK to entities that are delinquent to the TRUST FUNDS.  If an employer subcontracts COVERED WORK to such an entity the employer becomes under the terms of the AGREEMENTS liable to the TRUST FUNDS for the MONTHLY CONTRIBUTIONS due by the subcontractor and any lower-tier subcontractors, plus interest and audit fees thereon.

23.     The AGREEMENTS provide the TRUST FUNDS with specific authority to examine the payroll and business records of employers, including NUSTART, to determine whether they have reported all hours worked by (or paid for) their employees who perform COVERED WORK, and whether they have paid the appropriate MONTHLY CONTRIBUTIONS and other amounts due by them to the TRUST FUNDS, and/or to determine whether the employers, including NUSTART are in compliance with the reporting and payment obligations of the AGREEMENTS.  The AGREEMENTS further provide that employers, including the NUSTART, must maintain records sufficient for the TRUST FUNDS to verify proper Monthly Reporting, and its compliance with the reporting and payment obligations of the AGREEMENTS, and, where there has been inaccurate MONTHLY REPORTS, or other violations of the provisions of the AGREEMENTS, to determine the additional amounts due, and that the employer must pay the TRUST FUNDS' audit fees if it is delinquent to the TRUST FUNDS.  The TRUST FUNDS have delegated the authority to perform such audits to CLTF.

24.     The AGREEMENTS require employers to pay the TRUST FUNDS' attorneys' fees and costs of litigation to enforce the AGREEMENTS foregoing terms, including the MONTHLY CONTRIBUTION, Monthly Reporting, subcontracting and audit provisions.

25.     The AGREEMENTS and ERISA provide the TRUST FUNDS with specific authority to examine and copy all of NUSTART'S payroll and business records which may be pertinent to determining whether NUSTART has reported all hours

386389.1

worked (or paid for) by employees who perform services covered under the AGREEMENTS and has paid the appropriate MONTHLY CONTRIBUTIONS to the TRUST FUNDS, and that the NUSTART shall be responsible for the costs of such audit.

## **BREACH OF AGREEMENTS**

26.    Plaintiff is informed and believes and based on such information and belief alleges that NUSTART employed workers who performed services covered by the AGREEMENTS and failed to pay the rates specified in the AGREEMENTS to TRUST FUNDS on behalf of those workers for each hour worked (or paid for) by employees performing services covered by the AGREEMENTS.  Due to NUSTART'S continuing obligation to submit timely accurate monthly contribution reports and obligation to comply with a complete audit by the TRUST FUNDS, additional amounts may be discovered and become due and owing by NUSTART have not yet been ascertained at this time.  Said amounts including MONTHLY CONTRIBUTIONS, liquidated damages, SUBCONTRACTING VIOLATIONS, interest, and audit fees will be established by proof at the trial or other hearing.

27.    All conditions to NUSTART'S obligations to make payments under the AGREEMENTS have been met.

## **DAMAGES**

28.    As a result of NUSTART'S failure to pay the rates specified in the AGREEMENTS, Plaintiff is informed and believes and thereupon alleges that there is now owing and unpaid to the TRUST FUNDS from NUSTART, during time periods from August 2017 to February 2019, damages in the sum of at least $57,985.22 consisting of $42,012.32 in unpaid MONTHLY CONTRIBUTIONS, $8,379.28 in liquidated damages, $960.00 in audit fees; and $6,633.62 in interest on the late and/or unpaid MONTHLY CONTRIBUTIONS owed to the TRUST FUNDS through April 8,

386389.1

2020, plus additional accrued interest thereafter at the plan rate(s), currently 5.25% per annum, until payment of the contribution is made, less a credit of $1,676.38, plus any additional MONTHLY CONTRIBUTIONS, liquidated damages, SUBCONTRACTING VIOLATIONS, audit fees and interest on the additional amounts owed at the plan rate(s), according to proof at the time of trial or other hearing.

29.    The failure of the NUSTART to pay MONTHLY CONTRIBUTIONS when due causes harm to the TRUST FUNDS and its participants, which is impractical to accurately quantify.  This may include the cost of collecting the MONTHLY CONTRIBUTIONS from the NUSTART or third parties (not including the costs of this litigation), the cost of special processing to restore benefit credits because of late MONTHLY CONTRIBUTIONS, the temporary loss of insurance coverage by employees (even if later restored) and medical harm to participants and beneficiaries who may have foregone medical care when notified that medical insurance ceased because of their employer's failure to pay MONTHLY CONTRIBUTIONS.  The liquidated damages provision of the AGREEMENTS was meant to compensate for this unquantifiable loss, and is based on the ratio of collection costs over amounts collected, regularly reported to the Trustees.  The Trustees of the TRUST FUNDS have the authority, in their discretion, to waive all or part of these liquidated damages.  In this case, they have exercised their discretion by declining to waive any liquidated damages.

30.    It has been necessary for the TRUST FUNDS to engage counsel to bring this action to compel compliance with the AGREEMENTS which provide that in the event litigation is necessary with respect to any of the fringe benefit MONTHLY CONTRIBUTIONS and/or damages against NUSTART, then NUSTART would pay reasonable attorney's fees and all other reasonable expenses of collection, including audit fees.

31.    Under Sections 515 and 502(g) of ERISA, NUSTART is liable to the TRUST FUNDS not only for the amount of delinquent MONTHLY CONTRIBUTIONS but also (a) for pre-judgment and post-judgment interest on the

-10-

386389.1

delinquent sums (as provided for in Section 502(g) of ERISA); (b) for the higher of interest or liquidated damages (as provided for in Section 502(g) of ERISA); (c) for attorneys' fees; and (d) for other relief permitted by Section 502(g) of ERISA.

## SECOND CLAIM FOR RELIEF

**Damages for Breach of Fiduciary Duties in Violation of ERISA**

**(Against NUSTART and PRINCIPALS)**

32.     Plaintiff repeats and realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 31 above.

33.     Plaintiff is informed and believes and thereon alleges that PRINCIPALS were and still are parties in interest, the agents, managing officers, directors, managing employees, and/or beneficial owners of NUSTART with the authority to direct, control, and/or manage the business affairs of NUSTART including the disposition of NUSTART 'S assets.

34.     Plaintiff is informed and believes and thereon allege that NUSTART and PRINCIPALS (collectively hereinafter "EMPLOYERS") were and still are fiduciaries with respect to the TRUST FUNDS within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control respecting management or disposition of assets of the TRUST FUNDS.

35.     The AGREEMENTS require that EMPLOYERS deduct MONTHLY CONTRIBUTIONS due to the CONSTRUCTION LABORERS VACATION TRUST FUND FOR SOUTHERN CALIFORNIA ("VACATION FUND") from EMPLOYER'S employees' weekly paychecks, in the amounts specified.  Such deductions are "amounts that a participant has withheld from his wages by an employer, for contribution" to the TRUST FUNDS, which thus become assets of the TRUST FUNDS within the meaning of 29 C.F.R. § 2510.3-102, "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets."

-11-

386389.1

36.     On "public works" as defined by California Labor Code § 1720, the EMPLOYERS were required to pay a minimum "prevailing" or "per diem" wage, including amounts which could either be paid directly on the weekly paycheck to employees, or contributed as "employer payments" (as defined in Labor Code § 1773.1) which includes payments to the TRUST FUNDS.  The U.S. Department of Labor has taken the position that such amounts are "amounts that a participant has withheld from his wages by an employer, for contribution" to the TRUST FUNDS, which become assets of the TRUST FUNDS within the meaning of 29 C.F.R. § 2510.3-102, "as of the earliest date on which such contributions . . . can reasonably be segregated from the employer's general assets;"  therefore, if EMPLOYERS performed work on public works projects, and EMPLOYERS deducted from the employees' weekly paychecks the benefit portion of the prevailing wage earmarked for payment to the TRUST FUNDS, but kept those amounts for their own use, and did not segregate or turn them over to the TRUST FUNDS, those amounts are assets of the TRUST FUNDS.  TRUST FUNDS must conduct a full and complete audit to determine the projects worked on and whether there were any amounts, besides amounts due to the VACATION FUND, earmarked for payment to the TRUST FUNDS were withheld by EMPLOYERS.

37.     By their discretionary authority or control over the management or disposition of assets of the TRUST FUNDS, specifically to the VACATION FUND, (as well as to any fringe benefit component of prevailing wages on public works, described above), EMPLOYERS are fiduciaries of the TRUST FUNDS within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

38.     The delinquent amounts presently known as owed to the VACATION FUND, ($8,330.84) and amounts due on public works projects, according to proof at the time of trial and/or other hearing, were and still are due and owing to the TRUST FUNDS and are assets of the TRUST FUNDS within the meaning 29 U.S.C. §§ 1001-1003, 1021-1031, 1111-1114 and 18 U.S.C. § 664.  Any known amounts are included in

-12-

the damages claimed in the First Claim for Relief, and that amount plus any additional amounts will be proven at the time of trial or other hearing, plus interest at the plan rate(s).

39.     By failing to timely account for and turn over the assets of the TRUST FUNDS described above, by failing to apply such assets for the exclusive benefit of participants and beneficiaries of the TRUST FUNDS, and instead using those assets for their own benefit, EMPLOYERS breached their fiduciary duties to the TRUST FUNDS within the meaning of sections 404(a)(1)(A), (B) and (D), of ERISA, 29 U.S.C. §§ 1104(a)(1)(A), (B) and (D).

40.     Plaintiff is informed and believes and thereon alleges that the acts and omissions to act by EMPLOYERS constitute misuse, misappropriation and/or conversion from employee benefit plans within the meaning of 18 U.S.C. § 664 and breach of their fiduciary obligations within the meaning of 29 U.S.C. § 1104 through § 1106.

41.     Pursuant to § 409 of ERISA, 29 U.S.C. § 1109, EMPLOYERS  are personally liable for damages to the TRUST FUNDS, and to make good to the TRUST FUNDS any losses to them resulting from each such breach of their fiduciary duties, and to restore to the TRUST FUNDS any profits which have been made through their use of these assets of the TRUST FUNDS.  Plaintiff seeks an accounting from EMPLOYERS of the amount and disposition of these assets.

42.     Plaintiff requests that it be awarded its costs and reasonable attorney's fees pursuant to § 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), and such other remedies as may be available pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2).

/ / /
/ / /
/ / /

386389.1

## THIRD CLAIM FOR RELIEF

### Obligation To Produce Records For Audit

### (Against EMPLOYER and BAILEY)

43.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 42, above as if fully set forth herein.

44.    Plaintiff's claim herein is for specific performance of the AGREEMENTS.

45.    Pursuant to the AGREEMENTS and 29 U.S.C. § 1059(a)(1), the TRUST FUNDS have specific authority to examine the payroll and business records of employers, including  NUSTART, to determine whether they have reported and paid contributions on all hours worked by (or paid for) their employees who perform work covered under the AGREEMENTS, and whether they have otherwise abided by the payment obligations of the AGREEMENTS.  The AGREEMENTS further provide that employers, including NUSTART, shall pay the TRUST FUNDS' attorney's fees if legal action is necessary to compel the audit, and audit fees to complete the audit of NUSTART'S records and the TRUST FUNDS have delegated the authority to perform such audits to CLTF.

46.    Plaintiff has requested access to NUSTART 'S payroll and business records for the purpose of conducting a complete and updated audit; however, EMPLOYERS have failed and/or refused to allow the TRUST FUNDS a complete audit of NUSTART'S payroll and business records.  Plaintiff seeks to complete the initial audit conducted on NUSTART'S records from August 2017 and to update that audit.

47.    The TRUST FUNDS have no adequate or speedy remedy at law in that EMPLOYERS refuse to comply with the production of all payroll and business records for a complete audit and updated audit.  Plaintiff therefore respectfully requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYERS to comply with NUSTART'S obligation under the AGREEMENTS

386389.1

and ERISA to fully produce its books and records in order for Plaintiff to complete an audit to determine if additional amounts are due.

48.     Upon completion of the audit sought herein, Plaintiff will seek recovery of any delinquent contributions found due, as well as liquidated damages, audit costs, other damages, interest in addition to attorneys' fees and costs as provided for by AGREEMENTS and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2)).

## FOURTH CLAIM FOR RELIEF
### For Preliminary And Permanent Injunctive Relief
### (Against EMPLOYERS)

49.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation contained in paragraphs 1 through 48, inclusive as though fully set forth herein.

50.     As part of its obligations under the AGREEMENTS, NUSTART is required to submit MONTHLY REPORTS to the TRUST FUNDS indicating the names, social security numbers and number of hours worked by each laborer it employed.  NUSTART is required to pay to the TRUST FUNDS, at the time the report is submitted, an amount equal to the total number of laborers hours worked (or paid for), multiplied by the applicable MONTHLY CONTRIBUTION rates.

51.     NUSTART has failed to comply with the provisions of the AGREEMENTS as follows:  during time periods from August 2017 to February 2019, NUSTART failed to report over 3,120.00 hours worked by its employees performing COVERED WORK on its MONTHLY REPORTS with full payment of the MONTHLY CONTRIBUTIONS due as required by the AGREEMENTS, and but for the partial audit conducted on NUSTART'S records, the hours worked by its employees would not have been discovered.

386389.1

52.     By reason of the actions by EMPLOYERS, the TRUST FUNDS have suffered and will continue to suffer extreme hardship and actual and impending irreparable injury and damage in that employee beneficiaries of the TRUST FUNDS acquire eligibility for health and welfare benefits and pension benefits by tabulating the number of hours reported by NUSTART and all contributing employers during each monthly period.  The funds necessary to pay all anticipated health and welfare claims and pension claims based upon the number of hours reported to the TRUST FUNDS on behalf of individual employees.  In addition, the amount of benefits payable to all employees for health and welfare and pension claims is actuarially determined on the basis of funds projected to be received from contributing employers.  The failure to timely submit MONTHLY REPORTS by NUSTART without the required payments necessarily contributes to the total potential liability of the TRUST FUNDS for health and welfare and pension claims without the TRUST FUNDS being able to readjust or recompute benefit levels based upon NUSTART'S failure to pay MONTHLY CONTRIBUTIONS on a monthly basis.  Further, NUSTART'S failure to timely pay MONTHLY CONTRIBUTIONS causes, among other things, substantial expense to the TRUST FUNDS in in adjusting employee credits, in determining the projects on which the employees worked, in seeking recovery of the amounts owed from NUSTART and/or from third parties and projects for payment.

53.     Sections 502(a)(3) and 502(g)(2)(E) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E), specifically authorizes this Court to enter injunctive relief for such violations of the plan and ERISA.  Injunctive relief is appropriate here to require the NUSTART to fulfill its obligations under the AGREEMENTS and ERISA.

54.     It has been necessary for Plaintiff to engage counsel to bring this action to compel compliance with the AGREEMENTS provide that in the event litigation is necessary with respect to any of the MONTHLY CONTRIBUTIONS and/or damages, NUSTART would pay reasonable attorneys' fees and all other reasonable expenses of collection, including audit fees.

386389.1

WHEREFORE, Plaintiff prays for judgment against NUSTART as follows:

### FOR PLAINTIFF'S FIRST CLAIM FOR RELIEF

1. For the sum of $42,012.32, or according to proof, for delinquent fringe benefit MONTHLY CONTRIBUTIONS pursuant to the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(A);

2. Interest on the delinquent MONTHLY CONTRIBUTIONS, in the amount of $6,633.62 through April 8, 2020 plus additional accrued interest at the plan rate(s) and subject to proof, as required by the AGREEMENTS and pursuant to 29 U.S.C. § 1132(g)(2)(B),

3. For liquidated damages in the sum of $8,379.28, or as subject to proof, as required by the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(C);

4. For Plaintiff's costs of audit in the sum of $6,400.00 and subject to proof, in accordance with the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(E);

5. For $57,985.22 based upon the above less a credit of $1,676.38 for a total claim of $56,308.84 plus additional amounts for MONTHLY CONTRIBUTIONS, liquidated damages, SUBCONTRACTING VIOLATIONS, audit fees and interest at the plan rate(s) according to proof at the time of trial or other hearing.

6. For reasonable attorney fees and costs of suit as required by the AGREEMENTS and 29 U.S.C. § 1132(g)(2)(D);

7. For such other and further relief as the Court deems proper.

### FOR PLAINTIFF'S SECOND CLAIM FOR RELIEF

1. For unpaid amounts to the VACATION FUND, and/or MONTHLY CONTRIBUTIONS, interest at the plan rate(s) and damages according to proof, owed by NUSTART and an accounting of all assets of the TRUST FUNDS which have not been turned over to the TRUST FUNDS, and any profits derived by NUSTART and/or

-17-

386389.1

PRINCIPALS therefrom;

2.      For personal liability of NUSTART and PRINCIPALS for their breaches of fiduciary duty, pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a);

3.      For reasonable attorneys' fees and costs of suit pursuant to the 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1); and

4.      For such other and further relief as the Court deems proper and just, pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2).

## FOR PLAINTIFF'S THIRD CLAIM FOR RELIEF

1.      For the issuance of injunctive relief pursuant to the AGREEMENTS and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering NUSTART, and its managing officers, managing employees, including PRINCIPALS, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to a complete audit of NUSTART'S records from August 2017 to the date of the audit, and to fully cooperate with Plaintiff with respect to the audit in order for Plaintiff to determine the total amount due to the TRUST FUNDS by NUSTART, and, specifically, to produce to Plaintiff the following payroll and business records – and any other records determined by Plaintiff to be necessary to conduct a full audit – for inspection, examination and copying:

       1.1.    All of NUSTART's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by NUSTART, its employees, its subcontractors, its lower-tier subcontractors and the employees of NUSTART's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution

-18-

386389.1

journals and any other records that might be relevant to an identification of the employees who performed work for NUSTART, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the NUSTART, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

1.2.   All of NUSTART's job files for each contract, project or job on which NUSTART, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between NUSTART and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of NUSTART's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which NUSTART, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

1.3.   All of NUSTART's records related to cash receipts, including but not limited to NUSTART's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which

-19-

386389.1

NUSTART, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

1.4.   All of NUSTART's bank statements, including but not limited to those for all checking, savings and investment accounts;

1.5.   All of NUSTART's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

1.6.   All collective bargaining agreements between NUSTART and any trade union, and all records of contributions by NUSTART to any trade union trust fund; and

2.   For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

3.   For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

## FOR PLAINTIFF'S FOURTH CLAIM FOR RELIEF

1.   That this Court issue the following preliminary and permanent prohibitory and mandatory injunctions against NUSTART, and its managing officers, its agents, managing employees, including PRINCIPALS, successors, assigns, and all those in active concert or participation with NUSTART:

1.1.   That NUSTART and its PRINCIPALS be ordered to deliver the following, or cause to be delivered, to the TRUST FUNDS' offices no later than 4:30 p.m., on the 20th day of each month for the duration of the AGREEMENTS:

1.2.   A complete, truthful and accurate "Employers Monthly Report to

386389.1

Trustees" covering all employees which NUSTART employed who were covered by the AGREEMENTS commencing with NUSTART'S August 2019 report;

    1.3.   An affidavit or declaration from a responsible officer of NUSTART attesting from his or her own personal knowledge under pain of perjury to the completeness, truthfulness and accuracy of the Employers Monthly Report to the Trustees; and

    1.4.   A cashier's check made payable to the Construction Laborers Trust Funds for Southern California for the full amount of the MONTHLY CONTRIBUTIONS due on Employers Monthly Reports for each account for which a report is to be submitted.

2.    For reasonable attorney's fees;

3.    For costs of suit herein; and

4.    For such other and further relief as the Court deems proper and just.


REICH, ADELL & CVITAN
A Professional Law Corporation

DATED:  April 30, 2020

By:  /s/ Marsha M.  Hamasaki
    MARSHA M. HAMASAKI
    Attorneys for Plaintiff

-21-

386389.1